(132 So. 351)

## STATE v. SOILEAU.

No. 30971.

Jan. 5, 1931.

L. Austin Fontenot, of.Opelousas, for appellant.

Percy Saint, Atty. Gen., R. Lee Garland, Dist. Atty., of Opelousas, E. R. Schowalter, Asst. to Atty. Gen. (Lewis & Lewis, of Opelousas, of counsel), for the State.

O'NIELL, C. J.

The appellant was convicted of manslaughter and sentenced to imprisonment in the penitentiary. He relies upon a bill of exceptions taken to a ruling of the district judge, allowing the district attorney, during the trial, to read to a witness for the state a part of the testimony which the witness had given at the coroner's inquest.

A record of the facts on which the objection and ruling were founded is annexed to the bill of exceptions. The indictment was for the killing of a man named Chester Soileau. The district attorney, having before him the record of the testimony which the witness had given at the coroner's inquest, asked the witness: "With the view of refreshing your memory, I will ask you if you didn't testify as follows to the coroner. * * *" Thereupon the defendant's attorney objected to the district attorney's reading, in the presence and hearing of the jury, the testimony which the witness had given at the coroner's inquest, and insisted that the district attorney should let the witness read the record of his testimony and say whether he had so testified at the coroner's inquest. The ground for the objection, as stated, was that the district attorney had not announced or indicated that he was surprised by the testimony which the witness was giving to the jury. The judge sustained the objection. The district attorney then asked the witness: "With a view of refreshing your memory, and for the purpose of putting you straight in your memory, I ask you whether you testified before the coroner's jury that Otis Soileau advanced on Chester Soileau and struck Chester, and that Chester struck back at him, and that then Otis cut him with a knife and stabbed him the second time?" The district attorney then handed the witness the record of his testimony given at the coroner's inquest. The defendant's attorney again objected to the district attorney's quoting the testimony, and requested the judge to instruct the jury that what the district attorney had said was not legal evidence. The judge did so instruct the jury, and added that the district attorney had the right to hand the record of the testimony to the witness in order that he might refresh his memory. The witness then replied: "I read it, but I can't understand it very well." The district attorney repeated

the question; to which the witness replied: "When I saw them, they were fighting. Chester hit Otis in the face and threw him down; and then the crowd gathered; and that's when Otis straightened up and cut him with his knife." The district attorney said to the witness: "Then you deny that Chester was struck by Otis before he struck Otis at all?" The defendant's attorney objected to the district attorney's attempting to impeach the testimony of a witness for the state. The district attorney then announced that he was surprised by the testimony given by the witness before the jury, because of the testimony which the witness had given at the coroner's inquest; and the judge ruled thus: "For the purpose of refreshing his memory, the district attorney may ask him the question."

The record does not show that the witness answered the last statement—in the form of a question—by the district attorney; but the testimony which we have quoted shows that the testimony which the witness was giving to the jury, on the trial of the case, was contradictory of his original version of the fatal difficulty, as given in his testimony at the coroner's inquest. The district attorney, therefore, was taken by surprise, and had the right to impeach the testimony of the witness by reference to the record of his testimony given at the coroner's inquest. Article 487 of the Code of Criminal Procedure provides that one may impeach the testimony of his own witness when he is taken by surprise by the testimony of the witness, provid-

ed the impeachment be limited to evidence of previous contradictory statements; and article 488 defines the word "surprise" as meaning, not such a surprise as might come merely from a failure of the witness to testify as expected, but a surprise resulting from his testifying on some material matter against the interest of the party introducing him and in favor of the other side. That is how the witness testified in this case, when he testified, substantially, that Chester Soileau struck Otis Soileau in the face and threw him down before Otis Soileau used his knife.

Aside from the right to impeach a hostile witness, article 375 of the Code of Criminal Procedure declares that a witness may refresh his memory by reference to testimony which he has given at a coroner's inquest, or on a preliminary examination, or at a previous trial. See, also, State v. Aspara, 113 La. 941, 37 So. 883, and State v. Ashworth, 139 La. 590, 71 So. 860. In so far as the ruling in State v. Walters, 145 La. 209, 82 So. 197, was contrary to the previous rulings, it has been superseded by article 375 of the Code of Criminal Procedure.

█ If there was ever any good cause for the complaint against the district attorney's reading to the witness the testimony which the witness had given at the coroner's inquest, the complaint was disposed of properly by the judge's instructing the jury that what the district attorney said or read was not to be considered as testimony in the case.

The verdict and sentence are affirmed.